## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE (the "Agreement") is made and entered into, at Saratoga Springs, New York, as of ___August 20___, 2024, by and among Carrie Jaycox (hereinafter defined as the "Plaintiff") and NIRC, Inc.("NIRC") and Russell Faden ("Mr. Faden") (NIRC and Mr. Faden are hereinafter defined separately and collectively as the "Defendants"). Each of Plaintiff and Defendants are hereinafter defined as a "Party," and are hereinafter defined separately and collectively as the "Parties."

### RECITALS

A. **WHEREAS,** NIRC employed Plaintiff as a sandwich artist in a Subway fast food restaurant operated by NIRC in Saratoga County, New York;

B. **WHEREAS,** Plaintiff, through her attorneys, Brown, LLC, filed an action against Defendants, on or about October 26, 2023, in the United States District Court for the Northern District of New York (the "Court"), to which the Court assigned Case No. 1:23-cv-01310-FJS-DJS (the "Action"), alleging, *inter alia*, that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the New York Labor Law ("NYLL"), §§ 650, *et seq.*, and 190, *et seq.*, and 12 NYCRR § 142-1.1, *et seq.*, and 12 NYCRR § 146, *et seq.*;

C. **WHEREAS,** Defendants deny all of the material allegations asserted by Plaintiff in her Complaint, and have denied and continue to deny that they have violated any law, rule or regulation or committed any wrong whatsoever against Plaintiff;

D. **WHEREAS,** the Parties have exchanged information related to the claims in this Action, such that they have adequate information to assess the appropriateness of this Agreement; and

E. **WHEREAS,** the Parties seek to resolve and settle their disputes and the Action in an amicable manner without the expense of further litigation;

**NOW, THEREFORE,** with the intent to be legally bound hereby, and in consideration of the mutual covenants and promises herein contained and for other good and valuable consideration, the sufficiency and receipt of which the Parties acknowledge, the Parties agree as follows, subject to Court approval pursuant to applicable provisions of federal, state and/or local law:

1. **Settlement Payment and Other Consideration**

   (a) NIRC shall pay, for the benefit of Plaintiff, a Settlement Sum, in the gross amount of Ten Thousand Dollars and No Cents ($10,000.00), for alleged back pay and attorneys' fees, in full and final settlement of any and all claims as set forth in this Agreement, and in consideration for this Agreement. NIRC shall pay this Settlement Sum via three (3) Settlement Payments.

(b) The first Settlement Payment shall be a check payable to Plaintiff in the gross amount of One Thousand Five Hundred Dollars and No Cents ($1,500.00), less applicable federal, state, and local taxes and other legally required deductions, for alleged back pay. NIRC shall report this first Settlement Payment on an IRS Form W-2, a copy of which NIRC shall provide to Plaintiff.

(c) The second Settlement Payment shall be a check payable to Plaintiff in the gross amount of One Thousand Five Hundred Dollars and No Cents ($1,500.00), without tax withholdings or other payroll deductions, for alleged liquidated damages. NIRC shall report this second Settlement Payment on an IRS Form 1099, a copy of which NIRC shall provide to Plaintiff.

(d) The third and last Settlement Payment shall be a check payable to Brown, LLC in the amount of Seven Thousand Dollars and No Cents ($7,000.00), for alleged attorneys' fees and costs, which the Parties negotiated separately and apart from Plaintiff's alleged damages. NIRC shall report this third Settlement Payment on an IRS Form 1099, a copy of which NIRC shall provide to Brown, LLC.

(e) NIRC shall send the three (3) checks comprising these three (3) Settlement Payments to Edmund C. Celiesius, Esq., Brown, LLC, 111 Town Square Place, Suite 400, Jersey City, New Jersey 07310, within thirty (30) days after the occurrence of the last of the following:

(i) Counsel for Defendants has received a copy of this Agreement signed by Plaintiff;

(ii) Counsel for Defendants has received a completed, signed, and dated copy of Plaintiff's IRS Form W-4;

(iii) Counsel for Defendants has received a completed, signed, and dated copy of Brown, LLC's IRS Form W-9; and

(iv) The Effective Date of this Agreement as defined in Paragraph 3 of this Agreement.

(f) Plaintiff shall be solely responsible for all income and payroll tax requirements, including Medicare and FICA taxes, if any, with respect to the payments set forth in Paragraph 1(b) and Paragraph 1(c) of this Agreement. For the avoidance of confusion, NIRC, and not Plaintiff, shall be responsible for payment of the employer's share of Medicare and FICA taxes with respect to the payment identified in Paragraph 1(a) of this Agreement.

2

2. **General Release; Mutual**

    (a)    In consideration for the payment and benefits provided for in Paragraph 1 of this Agreement, Plaintiff and her successors, assigns, heirs, executors, agents, administrators and any legal and personal representatives, and each of them hereby releases, remises, acquits and forever discharges Defendants and Defendants' respective current and former shareholders, subsidiaries, affiliates, related companies, employee benefit plans, related entities, divisions, licensors, licensees, directors, trustees, members, partners, managers, officers, employees, administrators, fiduciaries, insurers, agents, attorneys, franchisors, predecessors, successors, and assigns (and the current and former shareholders, directors, trustees, members, partners, managers, officers, employees, administrators, fiduciaries, insurers, agents, attorneys, franchisors, predecessors, successors, and assigns of such shareholders, subsidiaries, affiliates, related companies, employee benefit plans, related entities, divisions, licensors, and licensees), and all persons acting by, through, under, or in concert with any of them (Defendants and the foregoing other persons and entities are hereinafter defined separately and collectively as the "Company Releasees"), from any and all claims, demands, actions, causes of action, debts, liabilities, rights, contracts, obligations, duties, damages, costs, of every kind and nature whatsoever, and by whomever asserted, whether at this time known or suspected, or unknown or unsuspected, anticipated or unanticipated, direct or indirect, fixed or contingent, which may presently exist or which may hereafter become known, relating to any claim regarding unpaid or improperly paid wages, including claims of (a) violations of the minimum wage or overtime provisions of the Fair Labor Standards Act; (b) violations of the New York Labor Law, including but not limited to violations of the minimum wage and overtime provisions of the New York Labor Law; (c) Defendants' failure to pay any wages owed to Plaintiff; (d) the "spread of hours" provisions of the New York Labor Law and applicable Wage Orders; (e) any and all claims that Plaintiff alleged or could have alleged in the Action; and/or (f) any and all claims for violation of any written or unwritten contract, agreement, understanding, policy, employee benefit plan, retirement or pension plan, severance plan, or covenant of any kind, or failure to pay wages, bonuses, employee benefits, other compensation, attorneys' fees, damages, or any other remuneration.

    (b)    In further consideration for the payments and benefits provided for in Paragraph 1 of this Agreement, Plaintiff and her successors, assigns, heirs, executors, agents, administrators and any legal and personal representatives, and each of them hereby further releases,

3

Doc ID: 281d6c50b52f03afc321fac39a116bf6e1decb42

remises, acquits and forever discharges Defendants and each of the other Company Releasees of and from any and all causes of action and claims whatsoever, which they had, have or may have against the Defendants and each of the other Company Releasees up until the date of Plaintiff's execution of this Agreement. This includes a release of any rights or claims Plaintiff may have under: the Age Discrimination in Employment Act of 1967; the Older Workers Benefit Protection Act; Title VII of the Civil Rights Act of 1964; the Family Medical Leave Act; the Equal Pay Act; the Americans with Disabilities Act of 1990; the Employee Retirement Income Security Act of 1974; the Rehabilitation Act of 1973; Title 42 of the United States Code §§ 1981, 1982, 1983 and 1985; the Equal Pay Act of 1963; the Genetic Information Nondiscrimination Act of 2008; the Fair Labor Standards Act; the National Labor Relations Act; the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq.; the Occupational Safety and Health Act; the Civil Rights Act of 1991; the U.S. Constitution; the New York Executive Law; the New York Human Rights Law; the New York State Worker Adjustment and Retraining Notification Act; the New York Constitution; the New York Labor Law; the New York Workers' Compensation Law Section 120; the New York Corrections Law; the New York Civil Rights Law; all other statutory or common law claims, including but not limited to claims for employment discrimination, retaliation, wages, competition, supplements, paid time off, vacation, benefits or commissions, and claims in tort, breach of express or implied contract, wrongful discharge, defamation, intentional infliction of emotional distress, negligence and attorney's fees; all claims referenced in the Action; and all other claims whatsoever against Defendants from the beginning of the world until Plaintiff's execution of this Agreement. This general release covers both claims that Plaintiff now knows about and claims Plaintiff may not know about.

(c) The general releases contained in Paragraph 2(a) and 2(b) shall not affect or limit: (i) any claims that may arise after the date Plaintiff signs this Agreement; (ii) Plaintiff's right to enforce the terms of this Agreement; and/or (iii) any other claims that, under controlling law, may not be released by private settlement.

(d) Defendants and their successors and assigns release, remise, acquit and forever discharge Plaintiff from any and all claims, demands, actions, causes of action, debts, liabilities, rights, contracts, obligations, duties, damages, costs, of every kind and nature whatsoever, and by whomever asserted, whether at this time known or suspected, or unknown or unsuspected, anticipated or unanticipated, direct or indirect, fixed or contingent, which may presently exist or which may hereafter become known, arising out

4

of or in any way connected with Plaintiff's relationship with any of Defendants, the termination of that relationship, or any other transaction, occurrence, act or omission, or any loss, damage or injury whatsoever, known or unknown, suspected or unsuspected, resulting from any act or omission Plaintiff committed or omitted prior to the date of Defendants' execution of this Agreement.

(e) The Parties acknowledge that, by entering into this Agreement, they are agreeing to waive any and all appeals that they may have or will have with respect to this Action.

### 3. Stipulation of Dismissal

Following the execution of this Agreement by each of the Parties and delivery of same to counsel, complete with Form W-4 executed by Plaintiff and Form W-9 executed by Brown, LLC, the Parties agree that their counsel will present this Agreement, along with the Proposed Stipulation and Order of Dismissal with Prejudice (the "Order") in the form attached hereto as Exhibit A, to the Court for review and approval. Counsel for Parties shall cooperate and take all necessary steps to arrange for the Court's approval of the Agreement and entry of the attached Order. The terms of the Agreement will become effective on (a) the eighth (8th) day after the execution of this Agreement, provided that Plaintiff has not revoked this Agreement before such date pursuant to this Agreement, or (b) the day that the Court provides notice to the Parties (via ECF notification or other means) of the Court's approval and execution of the Order, whichever date is later (the "Effective Date").

### 4. Non-Admission

The Parties understand and agree that this Agreement and the consideration provided herein does not constitute and shall not be used or construed in any way as an admission of any sort on the part of any Party. This Agreement is intended only to avoid the expense and inconvenience of litigation and arbitration, and is not, and shall not be deemed an admission of liability or a violation of any law, rule, regulation, order, agreement or policy. Moreover, neither this Agreement nor anything contained in it shall be construed to be or shall be admissible in any proceeding as evidence of any admission by Plaintiff or Defendants of any violation of any policies or procedures or of any federal, state or local statute, regulation or ordinance. This Agreement may be introduced, however, in any proceeding to enforce this Agreement.

### 5. Representations by Plaintiff

Plaintiff acknowledges, affirms and agrees that:

(a) She has read this Agreement and understands its meaning and legal and binding effect;

(b) She has knowingly and voluntarily entered into this Agreement of her own free will, without fraud, duress, or any undue influence;

(c) By signing this Agreement, she understands that Defendants may plead this Agreement as a complete defense to any claim covered thereunder;

(d) She understands that the release contained in Paragraph 2 of this Agreement is a General Release, inclusive of all laws that may be lawfully released;

(e) The consideration to be provided to her under this Agreement exceeds anything of value to which she would otherwise be entitled in the absence of this Agreement; fully and completely resolves any and all claims she and any attorney may have against Defendants for attorneys' fees, costs, disbursements, and the like; and is sufficient consideration for the General Release and her other promises under this Agreement;

(f) She acknowledges and agrees that this Agreement includes a release of all claims and rights under the Age Discrimination in Employment Act of 1967 and the Older Workers Benefit Protection Act;

(g) She has been competently represented by her counsel, Brown, LLC, in the negotiation of this Agreement, and she has been advised by this Agreement in writing to consult with an attorney of her choosing before executing this Agreement;

(h) She has been given at least twenty-one (21) days to consider the terms of this Agreement, but may voluntarily elect to sign the Agreement in a shorter period of time in order to receive the consideration set forth in this Agreement;

(i) Any changes to this Agreement made after the date it is first given to Plaintiff or her counsel, whether they are material or immaterial, do not restart the 21-day consideration period;

(j) She has seven (7) days to revoke this Agreement after signing it. Revocation may be made by delivering notice (written or electronic) to Charles H. Kaplan, Esq. at the following physical address and e-mail address: Hodgson Russ LLP, 605 Third Avenue, 23rd Floor, New York, New York 10158; email: ckaplan@hodgsonruss.com. If she revokes this Agreement, it will not be effective or enforceable, and she will not receive the benefits described in this Agreement. If she does not revoke this Agreement, it will take effect as provided in Paragraph 3 of this Agreement; and

(k) Other than the Action, she has not filed or permitted to be filed against Defendants, individually or collectively, any lawsuits,

65396765v6

Doc ID: 281d6c50b52f03afc321fac39a116bf6e1decb42

charges, arbitrations, criminal complaints, or claims of any kind whatsoever.

6. **Taxation**

It is understood and agreed that no representations have been made as to the federal, state or local tax consequences regarding the Settlement Payments set forth in Paragraph 1 of this Agreement. Plaintiff agrees to be responsible for her share of all federal, state or local income or employment taxes or contributions, or other federal or state payroll tax assessments arising by virtue of these payments. Plaintiff further agrees that she has no right of contribution or indemnification against Defendants arising from any claims, assessments, or liabilities asserted against Plaintiff by any federal, state or local taxing authority attributable to their share of taxes from this foregoing payment. Plaintiff agrees to indemnify and hold Defendants harmless for any claims, assessments, or liabilities asserted against Defendants by any federal, state or local taxing authority attributable to Plaintiff's share of taxes from the foregoing payments. For the avoidance of confusion, NIRC, and not Plaintiff, shall be responsible for payment of the employer's share of Medicare and FICA taxes with respect to the payment identified in Paragraph 1(a) of this Agreement.

7. **Successors and Assigns**

Upon the merger or consolidation of NIRC into or with another entity, this Agreement shall bind and inure to the benefit of both NIRC and the acquiring, succeeding, or surviving entities, as the case may be.

8. **Applicable Law; Forum Selection**

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to any laws, rules, or other provisions that would cause the application of the laws of any jurisdictions other than the State of New York, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern. The Parties consent to the sole jurisdiction of the United States District Court for the Northern District of New York for any litigation arising out of the terms of this Agreement or the Parties' performance thereunder; in the event that this Court lacks or declines jurisdiction over any such litigation, the Parties consent to the sole jurisdiction of the Courts of the State of New York located in Saratoga County, New York.

9. **Execution in Counterparts; Facsimile Signatures; Force and Effect**

This Agreement may be executed using facsimile signatures, and in counterparts, with the same effect as if the signatures were original and made on the same instrument. A copy of a Party's signature on this Agreement shall be acceptable in any action against that Party to enforce this Agreement. Facsimile or electronic copies of this Agreement shall be deemed for all purposes to have the same force and effect as the original hereof.

### 10. Breach; Cure; Enforcement

In the event of a breach of any provision of this Agreement, the non-breaching Party shall provide written notice to the breaching Party as provided for in Paragraph 16 of this Agreement, and the breaching Party shall have ten (10) days from receipt of the written notice to cure the aforementioned breach (the "cure period"). In the event a material breach of this Agreement still exists after the cure period has expired, the non-breaching Party shall be entitled to reasonable costs, attorneys' fees, and disbursements required in order to enforce this Agreement, in addition to any other relief a court deems just and proper.

### 11. No Retaliation

Consistent with their legal obligations, Parties will not retaliate against each other for commencing or defending the Action and/or participating in settlement.

### 12. Entire Agreement

The Parties acknowledge and agree that this Agreement reflects the entire agreement between the Parties and fully supersedes any and all prior or contemporaneous agreements and understandings among the Parties. There is no other agreement except as stated herein. No other promises or agreements shall be binding or shall modify this Agreement unless signed by Plaintiff and Defendants hereto, specifically referring to this Agreement and the modification or amending of it. Plaintiff acknowledges that Defendants have made no promises to her other than those contained in this Agreement.

### 13. Non-Waiver

No delay or omission by any Party in exercising any rights under this Agreement shall operate as a waiver of that or any other right. A waiver or consent given by a Party on one occasion shall be effective only in that instance and shall not be construed as a bar or waiver of any right on any other occasion. No provision of this Agreement may be waived except by a written instrument signed by the Party waiving compliance.

### 14. Interpretation

(a) Construal. Each of the Parties has participated in negotiating and drafting this Agreement after consulting with, and/or having had the opportunity to consult with, legal counsel. Accordingly, no Party shall maintain that the language of this Agreement shall be construed in any way by reason of another Party's putative role in drafting any of these documents. Ambiguities shall not be construed against any Party based on any claim about the identity of the drafter of the language.

(b) Severability. In the event that any provision of this Agreement is found to be illegal or unenforceable, such provision shall be modified to the minimum extent necessary to make it lawful and enforceable to carry out the intent and agreement of the Parties,

and as so modified, it, together with the remainder of this Agreement, shall remain in full force and effect. If such provision cannot be modified to make it lawful and enforceable to carry out the intent and agreement of the Parties, then such provision shall be severed from this Agreement, and this Agreement shall be construed as if such illegal or unenforceable provision had not been set forth in it, and the remainder of the Agreement shall remain in full force and effect.

(c) <u>Paragraph Headings</u>. Paragraph headings are used herein for reference only and do not affect the meaning of any provision of this Agreement.

(d) <u>Miscellaneous</u>. In this Agreement, unless the context otherwise clearly requires, words used in the singular include the plural, the plural includes the singular, and the use of any gender shall include all other genders.

(e) <u>Recitals</u>. The recitals set forth above are part of the contractual undertaking of the Parties and shall not be regarded as surplusage.

15. **<u>Representations and Warranties</u>**

(a) Each of the undersigned warrants that he/she/it is legally competent and duly authorized by the respective Parties to execute this Agreement on behalf of such Party.

(b) Each Party hereby warrants, represents, covenants and acknowledges that he/she/it has been represented by independent legal counsel in connection with the review, negotiation, and execution of this Agreement. Each Party acknowledges that he/she/it has voluntarily, and upon the advice and approval of his/her/its legal counsel in this matter, read and understood this Agreement in a language of his/her choosing and all of its terms and conditions and agrees to each and every term and condition herein.

(c) Plaintiff represents that, other than the Action, Plaintiff has not commenced or asserted any lawsuit, administrative charge or complaint, arbitration, claim or other legal proceeding against any or all of Defendants in any forum, judicial, quasi-judicial or administrative, that is designed to remedy or seek redress for any right or rights waived and/or released by this Agreement.

65396765v6

Doc ID: 281d6c50b52f03afc321fac39a116bf6e1decb42

### 16. Notices

Any provision of this Agreement that calls for notice to be sent to Plaintiff or Defendants shall be sent via email, messenger, overnight mail, or first-class mail, and shall be directed as follows, or to any other address designated in writing by the relevant Party or Parties:

| Plaintiff: | Defendants: |
|---|---|
| Edmund C. Celiesius, Esq. | Charles H. Kaplan, Esq. |
| Brown, LLC | Hodgson Russ LLP |
| 111 Town Square Place, Suite 400 | 605 Third Avenue, 23rd Floor |
| Jersey City, New Jersey 07310 | New York, NY 10158 |
| ed.celiesius@jtblawgroup.com | ckaplan@hodgsonruss.com |

All notices, requests, consents and other communications hereunder shall be deemed to have been received either (i) if by hand, at the time of the delivery thereof to the receiving Party at the address of such Party's counsel set forth above, (ii) if made by email, at the time that receipt thereof has been acknowledged by electronic confirmation or otherwise, (iii) if sent by overnight courier, on the next business day following the day such notice is delivered to the courier service, or (iv) if sent by U.S. Postal Service Priority Mail or Certified Mail, on the fifth (5th) business day following the day such mailing is made. No other methods of delivery are valid other than those expressly set forth above.

### 17. Execution of Additional Documents; Further Actions

The Parties agree to execute any and all additional documents and take any and all further actions reasonably requested by any other Party that is necessary to carry out the purpose and intent of this Agreement.

### 18. Effect of Court's Non-Approval of Agreement

Should the Court decline or otherwise fail to approve the Agreement in substantially the same terms as presented to the Court (or upon other terms that are mutually acceptable to the Parties), and accordingly not dismiss the Action with prejudice, this Agreement will be null and void, and the Parties will return to the same position with respect to the Action as if this Agreement had never been entered into. In such event, the Parties may not introduce the Agreement or its negotiations in the Action, or in any arbitration concerning Plaintiff's claims in the Action, as evidence of liability or as a defense thereto.

### 19. Protected Rights

This Agreement will not affect the rights and responsibilities of the U.S. Equal Employment Opportunity Commission ("EEOC") to enforce any law, and this Agreement will not be used to justify interfering with Plaintiff's protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC, the National Labor Relations Board, the Securities and Exchange Commission, the Occupational Safety and Health Administration, or any other federal, state, or local government agency. The Parties agree that Plaintiff knowingly and voluntarily waives all rights or claims (that arose prior to Plaintiff's execution of this

Agreement) Plaintiff may have against the Company Releasees, or any of them, to receive any benefit or remedial relief (including, but not limited to, reinstatement, back pay, front pay, damages, and attorneys' and experts' fees) as a consequence of or any charge or complaint filed with the EEOC, or any other agency. Notwithstanding the foregoing, nothing in this Agreement prohibits or restricts Plaintiff from: making any disclosure of information required by law; providing information to, or testifying or otherwise assisting in any investigation or proceeding brought by any federal, state, or local regulatory or law enforcement agency or legislative body, any self-regulatory organization, or any designated legal compliance officer at NIRC, with or without prior notice to Defendants, or accepting a monetary award from a government-administered whistleblower award program, such as that authorized under Section 21F of the Securities Exchange Act of 1934, for providing information directly to a government agency. For purposes of clarity, nothing in this Agreement limits Plaintiff's rights under Section 7 of the National Labor Relations Act. However, Plaintiff understands, acknowledges, and agrees that, by signing this Agreement, she is waiving, releasing, and forever discharging any right, claim, or entitlement to any personal monetary recovery or other relief concerning Defendants, regardless of whether such a charge, complaint, or other legal proceeding is brought by Plaintiff or by any person on Plaintiff's behalf, except where such a waiver or release is prohibited by applicable federal, state, or local law.

20.  **Medicare**

Plaintiff represents, affirms, and warrants that she is not a Medicare beneficiary as of the date of her execution of this Agreement, and no conditional payments have been made by Medicare on her behalf. The Parties have attempted to resolve this matter in compliance with both federal and state law, and it is believed that the settlement terms adequately consider and protect Medicare's interest and do not reflect any attempt to shift responsibility of treatment to Medicare pursuant to 42 U.S.C. § 1395y(b). While Plaintiff represents, affirms, and warrants that she is not, and has never been a Medicare beneficiary and thus there is no obligation to report this settlement to the Centers for Medicare & Medicaid Services ("CMS") pursuant to 42 U.S.C. § 1395y(b), if it is ever determined that Plaintiff is or was such a beneficiary, Plaintiff acknowledges her duty to cooperate with NIRC in order to allow NIRC and/or the Responsible Reporting Entity ("RRE") to fulfill any obligation to comply with any reporting requirement under such law. Plaintiff agrees to provide any and all information necessary for NIRC and/or the RRE to comply with Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007. The Parties acknowledge, understand, and agree that any present or future action by CMS or Medicare on this settlement, or Plaintiff's eligibility or entitlement to Medicare or Medicare payments, will not render this Agreement void or ineffective, or in any way affect the finality of this settlement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

21. **Signatures**

THE PARTIES ACKNOWLEDGE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT, UNDERSTAND IT, AND ARE VOLUNTARILY ENTERING INTO IT OF THEIR OWN FREE WILL, WITHOUT DURESS OR COERCION, AFTER DUE CONSIDERATION OF ITS TERMS AND CONDITIONS.

_____
Carrie Jaycox
Date: 08 / 20 / 2024

_____
Russell Faden
Date: 8/27/24

NIRC, Inc.

By: Russell Faden
Title: President
Date: 8/27/24

## EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CARRIE JAYCOX, individually, and
on behalf of others similarly situated,

                              Plaintiff,

-against-                                                  Civil Action No.
                                                                  1:23-CV-01310

NIRC, INC. and RUSSELL FADEN,                    (FJS/DJS)

                              Defendants.

---

### STIPULATION AND ORDER OF DISMISSAL WITH PREJUDICE

       IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned counsel, the attorneys of record for all Parties in the above-captioned action, that all of Plaintiffs' claims in the Complaint in the above-captioned action be and hereby are dismissed, with prejudice, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. The Parties further agree that the Court will retain jurisdiction of this matter for the sole purpose of enforcing the Settlement Agreement. Each Party shall bear her, its, or his own costs and attorneys' fees.

Dated: _____

| BROWN, LLC | HODGSON RUSS LLP |
|---|---|
| By: /s/ _____ | By: /s/ _____ |
| Jason T. Brown, Esq. | Glen P. Doherty |
| Federal Bar No. _____ | Federal Bar No. 501591 |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 111 Town Square Place, Suite 400 | 677 Broadway, Suite 401 |
| Jersey City, NJ 07310 | Albany, New York 12207 |
| Tel: (877) 561-0000 | Tel: (518) 465-2333 |
| E-mail: jtb@jblawgroup.com | E-mail: gdoherty@hodgsonruss.com |

**SO ORDERED:** _____           _____, 2024
                 Honorable Daniel J. Stewart
                 United States Magistrate Judge